UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUDITH LINDEN,

                     Plaintiff,

-against-

TARGET CORPORATION,

                     Defendant.

**MEMORANDUM & ORDER**
**20-CV-4975 (NGG) (SIL)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Defendant Target Corporation's ("Target") motion for summary judgment and costs. (Dkt. 30 ("Mot.").) For the following reasons, the court GRANTS Target's motion for summary judgment and DENIES Target's motion for costs.

## I.  BACKGROUND[1]

On September 6, 2019, Judith Linden and her husband, Jay Linden, went to the Target retail store in Riverhead, New York to return an item. (Def. 56.1 St. (Dkt. 30-21) ¶ 1; Pl. 56.1 St. (Dkt.

---

[1] The facts on which the court relies are drawn from the Local Civil Rule 56.1 Statements of Fact filed by the parties. Generally speaking, "[w]hen facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence and denied by only a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the [c]ourt deems such facts true." *Alessi Equipment, Inc. v. Am. Piledriving Equipment, Inc.*, 578 F. Supp. 3d 467, 478 n.4 (S.D.N.Y. 2022). Where the parties' 56.1 Statements disputed a fact but failed to cite to any countervailing evidence in the record, the court reviewed the exhibits filed along with the parties' moving papers. *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 ("[T]he district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed. In doing so, the court may rely on other evidence in the record even if uncited."). In such contexts, the court will cite to the record evidence and note any non-conclusory disputes of fact supported by the record where appropriate.

30-26) ¶ 1.) Judith and Jay were walking down the main aisle, in front of the cash registers, when Judith fell. (Def. 56.1 St. ¶¶ 2-3; Pl. 56.1 St. ¶¶ 2-3.) Jay, who was walking a few feet ahead of Judith, did not see her fall. (Ex. H to Decl. of Allison C. Leibowitz (the "Leibowitz Decl.", and Exhibit H, the "Jay Depo.") (Dkt. 30-9) at 12.) Judith was taken to the hospital, where she was diagnosed with a fracture to her left femur. (Ex. I to Leibowitz Decl. (the "Judith Depo.") (Dkt. 30-10) at 46.) That injury ultimately required surgery and several weeks of recovery. (*Id.* at 46-48.)

In her deposition, Judith explained that her right foot got stuck, causing her to trip and fall. (Def. 56.1 St. ¶¶ 3-4; Pl. 56.1 St. ¶¶ 3-4.) There were no issues with the floor or lighting in the store. (Def. 56.1 St. ¶ 2; Pl. 56.1 St. ¶ 2.) Judith did not remember seeing any debris, garbage, spills, or liquid (Judith Depo. at 24), or any broken floor tiles (*id.* at 42), in the area where she fell. Jay affirmatively stated he saw no liquid, debris, or defects on the floor when he walked through the area prior to Judith's fall. (Jay Depo. at 13-14.) However, Jay and Judith stated that the floor was oddly "bright white" and "very shiny." (Jay Depo. at 13-14; *see also* Judith Depo. at 34.) Judith specifically stated that the floor looked "highly glossy or waxed," (Judith Depo. at 34-35), and asserts that over-waxing the floor, which made it slippery, caused her to fall. (Pl.'s Mem. in Opp. to Summ. J. ("Opp.") (Dkt. 30-27) at 21.) A picture of the floor in the area (Ex. L to Leibowitz Decl. (Dkt. 30-13)) and a security camera video of the incident (Ex. J to Leibowitz Decl. (Dkt. 30-11)) show the store's lights reflecting off the tile floor.

The security footage shows a large number of guests passing without issue through the spot where Judith fell prior to her fall. (*See id.*) Target also provided uncontroverted affidavits from employees who worked at the Riverhead Target on September 6,

2019, each of whom stated that all Target employees are responsible for continuously inspecting their surroundings in the store for any spills or obstructions on the floor. (*See* Ex. N to Leibowitz Decl. (Dkt. 30-15) ¶ 9; Ex. O to Leibowitz Decl. (Dkt. 30-16) ¶ 5; Ex. P to Leibowitz Decl. (Dkt. 30-17) ¶ 4; Ex. Q to Leibowitz Decl. (Dkt. 30-18) ¶ 8; Ex. R to Leibowitz Decl. (Dkt. 30-19) ¶ 5.) Each of these employees inspected the area where Judith fell immediately before or after the incident, and were able to identify themselves in the security footage. (Ex. N to Leibowitz Decl. ¶ 6 (five minutes before Judith's fall); Ex. O to Leibowitz Decl. ¶ 3 (six minutes before Judith's fall); Ex. P to Leibowitz Decl. ¶ 3 (ten minutes before Judith's fall); Ex. Q to Leibowitz Decl. ¶¶ 4-5 (30 minutes before Judith's fall and immediately after the accident); Ex. R to Leibowitz Decl. ¶ 2 (immediately after the accident).) None noticed any issues.

Target executive team leader Kenneth Mahoney was working at the Riverhead store on the date of the accident. (Ex. K to Leibowitz Decl. (Dkt. 30-12) at 8.)[2] He stated that regular floor cleaning and waxing was handled by a third-party company, All Jersey, but he was unaware of a specific schedule for cleanings (other than that they were cleaned every day before the store

---

[2] In addition to responses to Target's 56.1 Statement, Plaintiff's 56.1 Statement enumerates additional facts that Linden believes are undisputed. (Pl. 56.1 St. at 6-9.) Target responded to these statements in a 56.1 Counterstatement. (*See* Def. 56.1 Counterstatement (Dkt. 30-29).) Plaintiff asserts in these additional facts that Mahoney was not working at the Riverhead Target on September 6, 2019, but cites to a portion of Mahoney's deposition at which Mahoney stated he was not working that day at the *Medford* Target, his typical place of employment. (*See* Pl. 56.1 St. at 7; *but see* Ex. K to Leibowitz Decl. at 8.) In response to the next question, Mahoney explained that he was, in fact, working in Riverhead on the day in question. (Ex. K to Leibowitz Decl. at 8.) Since the record plainly contradicts Plaintiff's interpretation regarding Mahoney's work schedule, there is no "true factual dispute" on this fact. *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 408 n.1 (S.D.N.Y. 2017).

opens) or when All Jersey last cleaned the floors. (*Id.* at 14-15.) Mahoney believed that the floor was waxed several times per year, but did not know when it was last waxed prior to Judith's fall. (Pl. 56.1 St. at 8; Def. 56.1 Counterstatement ¶ 7.)

On September 8, 2020, Plaintiff brought this lawsuit in New York state court, seeking monetary damages for personal injuries caused by negligence. (*See generally* Compl. (Dkt. 1-1).) On October 16, 2020, Target removed the case to federal court. (*See* Notice of Removal (Dkt. 1.) On May 27, 2022, this court granted Target leave to file the instant motion for summary judgment and stayed expert discovery pending the resolution of this motion. (May 27, 2022 Minute Entry.)

## II.  LEGAL STANDARD

The court's role on a motion for summary judgment "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014) (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006)).[3] "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Feder v. Target Stores*, 15 F. Supp. 3d 253, 255 (E.D.N.Y. 2014) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of fact cannot be established by "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

---

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

The moving party meets its burden by showing there is no genuine issue of material fact regarding an essential element of the claim. *Feder*, 15 F. Supp. 3d at 255. If they do so, the burden shifts to the non-moving party to establish, based on evidence in the record, the existence of each element constituting its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). If the non-movant is unable to establish each element is at least reasonably disputed based on the evidentiary record, the motion should be granted.

## III. DISCUSSION

Under New York state law, a plaintiff alleging negligence must establish "(1) that the defendant owed the plaintiff a cognizable duty of care; (2) that the defendant breached that duty, and (3) that the plaintiff suffered proximately caused damages." *Feder*, 15 F. Supp. 3d at 256 (citing *King v. Crossland Savings Bank*, 111 F.3d 251, 255 (2d Cir. 1997)).

The owner of a store has a duty to maintain the store "in a reasonably safe condition." *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998). "In order to show breach of a duty of care in a slip-and-fall case, the plaintiff must demonstrate a genuine issue of material fact that the defendant either created the dangerous condition or had actual or constructive notice of the condition." *Lionel*, 44 F. Supp. 3d at 318; *see also Bykofsky v. Waldbaum's Supermarkets, Inc.*, 619 N.Y.S.2d 760, 761 (2d Dep't 1994). New York courts have held as a matter of law that a floor being "slippery" or "shiny," "in the absence of evidence of a negligent application of wax or polish," is insufficient to establish a breach of that duty. *Murphy v. Conner*, 84 N.Y.2d 969, 971 (1994) (citing *Kline v. Abraham*, 178 N.Y. 377, 381 (1904)); *Khaimova v. Osnat Corp.*, 799 N.Y.S.2d 779, 780 (2d Dep't 2005)

("In the absence of evidence of a negligent application of floor wax or polish, the mere fact that a smooth floor may be shiny or slippery does not support a cause of action to recover damages for negligence, nor does it give rise to an inference of negligence."); *Ventriglio v. Staten Island University Hosp.*, 774 N.Y.S.2d 571, 572 (2d Dep't 2004).

Further, the plaintiff's damages must have been proximately caused by the defendant's breach of care. Proximate cause typically relies on "a variety of factors" and is generally "to be decided by the finder of fact." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 312, 314 (1980). However, "a plaintiff's inability to identify the cause of the fall is fatal to the cause of action because a finding that the defendant's negligence, if any, proximately caused the plaintiff's injuries would be based on speculation." *Rajwan v. 109-23 Owners Corp.*, 82 A.D.3d 1199, 1200 (2d Dep't 2011); *see also Amster v. Kromer*, 54 N.Y.S.3d 103, 104 (2d Dep't 2017); *Edwards v. N.Y. City Transit Auth.*, 899 N.Y.S.2d 203, 204 (1st Dep't 2010).

## A. Proximate Cause

Target argues that Plaintiff has failed to identify the cause of her fall, and therefore cannot show proximate cause. *See, e.g., Rajwan*, 82 A.D.3d at 1200. In support, Target cites to several portions of Plaintiff's deposition testimony, where she stated she was unsure how she tripped. (*See* Judith Depo. at 23 ("Q: And am I correct that as you sit here right now, you do not know what you tripped on? A: Yes."); *id.* at 26 ("Q: Like I said, can we agree, at the time you tripped, you didn't know why you tripped? . . . A: Yeah. Yes.").) Plaintiff also acknowledged at her deposition that it was "possible" she told a physical therapist that she "tripp[ed]

over her feet," as purportedly reflected in a report prepared by the physical therapy office. (*Id.* at 44-45.)[4]

In response, Plaintiff points to other deposition testimony, in which she claims she slipped because "the floor was very shiny[,] . . . unusually shiny" and "looked highly glossy or waxed[.]" (Judith Depo. at 34.) Jay testified to the same. (Jay Depo. at 14.) The picture submitted, which show the store lights reflecting clearly in the floor, could be viewed by a reasonable jury as support for this claim. (Ex. L to Leibowitz Decl.) Judith explained that, as she walked down the store aisle, her "right foot got stuck . . . [f]rom the midsection to the toe," causing her to fall on her left side. (Judith Depo. at 25.)

Although less than emphatic, these competing explanations constitute a genuine issue of fact sufficient to defeat summary judgment. Target would be free to present Plaintiff's deposition testimony that she could not recall what she tripped on, and Plaintiff could testify that she slipped on the shiny, glossy floor; the factual question of how she fell, therefore, is properly left to the jury.

Target's response—that Plaintiff should be held to a legal differentiation between the words "slip" and "trip"—misses the mark.

---

[4] Target did not submit the report with the instant motion, and Judith's deposition testimony is quite equivocal. (*See* Judith Depo. at 44 ("Q: Do you recall making that statement at the physical therapy facility that day? A: No. Q: Can we agree that the only person they would have gotten that information from was you? A: Yes. Q: Is it possible you made that statement at the physical therapy facility that day? A: Yes.").) As discussed *infra*, there is a genuine issue of material fact regarding the cause of Judith's fall regardless of whether this testimony is considered, so the court need not rely on it.

(Mot. at 5.) Target cites no case law supporting a plain demarcation between the two.[5] More importantly, Target fails to explain why a non-lawyer's use of two similar terms should justify discarding Plaintiff's story entirely. Such a result would be particularly unfair here, as every description of the incident as a "trip" during Plaintiff's deposition was given by Target's attorneys; Judith merely responded to those questions. (*See, e.g.,* Judith Depo. at 23 ("Q: Okay. And am I correct, there came a moment that you tripped and fell forward? A: Yes."); *id.* at 26 ("Q: Like I said, can we agree, at the time you tripped, you didn't know why you tripped? . . . A: Yeah. Yes.").) Whether this switch in terminology, from Target's use of "trip" to Judith's use of "slip," is significant (or merely a polite acceptance of the question's use of a similar word) is an issue of credibility reserved for the jury.[6]

Target also cites to Plaintiff's responses to interrogatories and the Complaint, which each listed a variety of conclusory possible causes of Judith's fall without asserting a specific one. (*See* Ex. F to Leibowitz Decl. (Dkt. 30-7) at 3 ("[T]he plaintiff was caused to slip and fall due to dangerous condition(s) including but not limited to the following: (1) defective floors; (2) water, slippery/foreign substances and/or debris on the floor; (3) absence of non-slip floor matting; (4) flooring materials that were excessively slippery; (5) presence of excessive wax and/or floor

---

[5] The only case cited for this proposition is *Costa v. State of New York,* 997 N.Y.S.2d 690, 691-92 (2d Dep't 2014), which addressed the application of a New York labor law regulation governing tripping hazards and determined the phrase did not apply to a "pile of wood that was between three-to-four feet high" which "gave way" when the plaintiff stepped on it. The case neither addresses the difference between a "slip" and a "fall," nor holds that such a distinction would apply to non-lawyers' statements or in cases unrelated to the specific regulation at issue.

[6] For the same reasons, the court will not grant summary judgment on the basis of Target's argument that Judith's description of the incident—that her foot got stuck—is incompatible with a "slip" or a slippery surface. (Mot. at 5.)

sealant; (6) flooring materials that were uneven, broken, cracked, dilapidated, etc. and/or (7) inadequate illumination and thereby sustaining severe injuries[.]"); Ex. A to Liebowitz Decl. (Dkt. 30-2) ECF at 3 (same).) The argument that this kitchen-sink approach belies Plaintiff's claim of a specific cause is similarly unpersuasive. While such boilerplate assertions of possible causes are unhelpful, they are also not evidence against the Plaintiff. *See FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("Conclusory allegations or denials therefore are not evidence[.]"). The only evidence of causation presented in the record is Judith's deposition testimony—stating in some sections that she was unsure what caused her to trip, and in others that she slipped on the slippery floor.

Accordingly, there is a genuine issue of material fact regarding proximate cause, and the court will not grant Target's motion for summary judgment on this basis.

### B.  Duty and Breach

Next, Target provides two reasons that Plaintiff cannot show a genuine issue of material fact with respect to Target's duty of care or breach thereof: *first*, Plaintiff has presented no evidence that Target was negligent in cleaning or waxing the store's floor; and *second*, Plaintiff has presented no evidence that Target had actual or constructive notice of a dangerous condition that caused Plaintiff's injury. The court agrees on both.

#### 1.  Creating the Danger

Target argues that Plaintiff failed to raise a genuine issue of fact regarding whether Target violated its duty of care in how it cleaned or waxed the floors. Various Target employees provided evidence (through Kenneth Mahoney's deposition testimony and a variety of sworn affidavits) regarding the Riverhead store's practices. (*See* Ex. K to Leibowitz Decl. ("Mahoney Depo."); Ex. N to Leibowitz Decl.; Ex. O to Leibowitz Decl.; Ex. P to Leibowitz

Decl.; Ex. Q to Leibowitz Decl.; Ex. R to Leibowitz Decl.) Mahoney testified that regular cleaning and waxing was handled by a third-party company called All Jersey. (Mahoney Depo. at 8.) Cleanings were scheduled to occur each day before the store opened, although Mahoney was could not remember specifically whether a cleaning had occurred the day of Judith's fall. (*Id.* at 14.) Mahoney also stated that the floor was waxed several times a year, though he was unsure of the precise schedule or when the waxing had last occurred. (*Id.*)

Mahoney testified that Target did not keep any logbooks or records of the store's condition, or of specific spills or cleanup. (Opp. at 15-17.) But in addition to Mahoney's testimony regarding the regular cleaning schedule, every employee affidavit from the Riverhead store stated that, pursuant to Target policy, all employees are responsible for keeping an eye out for spills or obstructions and remedying any issues they see. (*See* Ex. N to Leibowitz Decl. ¶ 9; Ex. O to Leibowitz Decl. ¶ 5; Ex. P to Leibowitz Decl. ¶ 4; Ex. Q to Leibowitz Decl. ¶ 8; Ex. R to Leibowitz Decl. ¶ 5.) Four of the employees stated they passed through the area within the 30 minutes before Judith's fall; two of those did so only minutes prior; and another employee arrived immediately afterwards to check on Judith. (Ex. N to Leibowitz Decl. ¶ 6; Ex. O to Leibowitz Decl. ¶ 3; Ex. P to Leibowitz Decl. ¶ 3; Ex. Q to Leibowitz Decl. ¶¶ 4-5; Ex. R to Leibowitz Decl. ¶ 2.) Each further stated that they were able to identify themselves in the security footage provided as Exhibit J.[7] Far from providing

---

[7] The footage, taken from some distance away by a security camera which covers the area where Judith fell, shows a large number of customers and employees passing through the area without issue during the time before and after Judith's fall. (*See* Ex. J to Leibowitz Decl.) Although the court is unable to identify specific employees, Judith has raised no dispute regarding these employees' claims that they are shown, and none of the employees were disposed.

evidence that the floor was dangerous, nothing in these individuals's observations indicated that there was anything slippery or obstructive on the floor where Judith fell.

In response, Plaintiff argues that Mahoney's deposition illustrates Target's negligence because he was unaware of the specific waxing schedule or the last time the floors at the Riverhead store were waxed prior to Plaintiff's accident, nor could he give specific evidence regarding that day's cleaning. (Opp. at 12-14.) But Mahoney was not deposed as a representative of the corporation pursuant to Rule 30(b)(6), and his answers therefore cannot be imputed to Target; he testified in his individual capacity as a witness of the day's events and Target's general policies. Mahoney's lack of personal knowledge of the last time the floor was waxed or cleaned is not an admission by Target that wax was applied negligently (or not applied at all).

This evidentiary record provides no support for a claim that Target "created the dangerous condition." *Lionel*, 44 F. Supp. 3d at 318-19. To start with, the record does not demonstrate the floor was dangerous in a manner recognized by New York law: the only evidence of negligent waxing is that the floor was "very shiny," which (as discussed *supra*) is insufficient to show negligence as a matter of New York law. *See, e.g., Murphy*, 84 N.Y.2d at 971. The record further establishes, without contradiction, that All Jersey was responsible for waxing and cleaning, (Ex. K to Leibowitz Decl. at 14-15), and Plaintiff has not attempted to show that All Jersey's actions could be imputed to Target. *Galler v. Prudential Ins. Co. of Am.*, 63 N.Y.2d 637, 638 (1984) (discussing *Silva v. Am. Irving Sav. Bank*, 295 N.Y.S.2d 366, 367 (1968), which dismissed a case regarding negligent waxing against the building owner because the "cleaning contractor was not a party defendant" and there was insufficient proof of notice to owner). Even assuming the relationship with All Jersey is of a type which would make Target liable for All Jersey's actions, the record is

11

entirely devoid of evidence that All Jersey waxed the floors in a negligent manner: there is no record of when the floor was last waxed, how much wax was used, or how it was applied; nor is there any explanation of what answers to those questions would have been appropriate or reasonable (or negligent). *Cf. Donovan v. Tommy Hilfiger Inc.*, 687 N.Y.S.2d 140, 141 (1st Dep't 1999) (holding tenant's deposition testimony that a slippery finish was removed from floor the day before the accident created issue of fact); *Gracchi v. Italiano*, 736 N.Y.S.2d 395, 396 (2d Dep't 2002) (denying summary judgment because sworn statement by defendants stated plaintiff slipped and fell on "patch of paste wax" after defendant waxed the floor). Plaintiff "has had ample opportunity to pursue the disclosure of defendants' maintenance practices and records," *Caran v. Hilton Hotels Corp.*, 750 N.Y.S.2d 60, 61 (1st Dep't 2002), or those of All Jersey, to uncover evidence of the answers needed, but has failed to do so.

"[T]he record is devoid of any evidence to establish that the substance [making the floor slippery] was, in fact, wax, and that a hazardous condition was created by negligent application of wax" by either Target or All Jersey. *Schirripa v. Waldbaums Supermarket*, 725 N.Y.S.2d 86, 87 (2d Dep't 2001). Having failed to establish a genuine dispute of fact regarding the existence of a hazard or who created it, Plaintiff has failed to establish a breach of Target's duty to maintain the store "in a reasonably safe condition." *Cooper*, 998 F. Supp. at 220.

### 2. Notice

Even if there was evidence that a hazardous condition existed and was negligently created, the motion for summary judgment should also be granted because Plaintiff has failed to present evidence that Target had actual or constructive notice of the issue. The record is completely devoid of evidence that Target was aware or should have been aware that the floor was slippery.

As already discussed, cleaning and waxing the floors was the responsibility of All Jersey, and it is unclear when they last did so. Even assuming the floors were last waxed the morning before Judith's fall, though, the incident occurred after 5:00 pm, leaving plenty of time for the issue to come to Target's attention by way of another customer or an employee. (*See* Ex. J (time stamp on video).) Yet no evidence indicates anyone else fell or otherwise noticed the floor was slippery. The video shows approximately 15 minutes of guests and employees walking through the area without incident before Plaintiff. (*Id.*) Four employees had passed through the area and attested they inspected it as they went, and each attested that the area was safe. (Ex. N to Leibowitz Decl. ¶ 6; Ex. O to Leibowitz Decl. ¶ 3; Ex. P to Leibowitz Decl. ¶ 3; Ex. Q to Leibowitz Decl. ¶¶ 4-5.) And although the photograph submitted showed a "shiny," reflective surface in line with Judith and Jay's descriptions, that appearance alone would not have been sufficient to put Target on notice that the floor was dangerously slippery.

Accordingly, Plaintiff has failed to demonstrate actual or constructive notice of a dangerous condition in the Target store.

## C. Motion for Costs

Target also moves for an award of the costs associated with this motion for summary judgment. (*See* Mot. at 8-9.)[8] During the pendency of this case, Target sent Plaintiff "a Request for Admissions requesting that plaintiff admit that she does not know what caused her to fall in attempt to aid the resolution of this matter."

---

[8] Plaintiff also mentions in the Opposition that costs should be awarded against Target instead. (*See* Opp. at 25 ("Actually, based on the facts and requirement to be granted costs in this case, Plaintiff should be awarded costs herein for this frivolous summary judgment motion.").) It is unclear whether Plaintiff intended to move for costs or was merely using a rhetorical flourish. In any event, as Target's summary judgment motion is granted, any motion for costs by Plaintiff is denied.

(*Id.* at 8; Ex. G to Leibowitz Decl. (Dkt. 30-8) at 1.) Plaintiff responded by simply denying the statement. (Ex. G to Leibowitz Decl. at 4.) On April 12, 2022, Target served a notice pursuant to Federal Rule of Civil Procedure 11, asserting that the conflict between this denial and Judith's deposition testimony rendered frivolous the litigation and Plaintiff's arguments regarding Target's negligence. (*See* Ex. S to Leibowitz Decl. (Dkt. 30-20).) Because Plaintiff failed to dismiss the claims in response to this letter, Target asserts they are entitled to the costs of the present motion.

At the outset, Rule 11 states that "[a] motion for sanctions must be made separately from any other motion[.]" Fed. R. Civ. P. 11(c)(2). Target included the Rule 11 request for costs in this motion for summary judgment, and therefore failed to meet this requirement. Such a violation is sufficient reason to deny the motion. *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2d Cir. 2008) (affirming denial of Rule 11 motion because party "failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule.").

In any event, an award of costs would not be warranted here, even if made in a procedurally proper manner. Under Rule 11, "the imposition of sanctions by the [c]ourt . . . is left to the court's discretion." *Kirschner v. Zoning Bd. of Appeals of Inc. Vill. of Valley Stream*, 159 F.R.D. 391, 395 (E.D.N.Y. 1995). As discussed above, Judith's deposition testimony creates a genuine dispute regarding whether she knew why she fell. Accordingly, it was not frivolous or a misrepresentation for Plaintiff to deny the statement or continue the action after the request for admissions. Nor was Plaintiff's claim of negligence so improper as to warrant invoking the court's discretionary authority to impose sanctions merely because the evidence collected was ultimately insufficient

to maintain an action. Accordingly, Target's motion for costs is denied.

## IV. CONCLUSION

For the foregoing reasons, Target's motion for summary judgment is GRANTED and Target's motion for costs is DENIED.

SO ORDERED.

Dated:    Brooklyn, New York
          January 25, 2023

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge